**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA CAFFEY, on behalf of herself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. dba UBER EATS,<br><br>Defendant. | Case No.:<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq.***<br><br><u>DEMAND FOR JURY TRIAL</u> |

## INTRODUCTION

Plaintiff Victoria Caffey ("Plaintiff") brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant Uber Technologies, Inc. dba Uber Eats ("Uber Eats" or "Defendant"), in negligently, and/or willfully contacting Plaintiff through robocalls on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, ("TCPA"), thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.  The TCPA strictly forbids nuisance telephone calls exactly like those alleged in this Complaint – intrusive robocalls to private cellular phones, placed to numbers obtained without the prior express consent of the recipients.

2.  Uber is a car service, which engages thousands of drivers throughout the US who can be hailed and dispatched through a mobile phone application to transport rides. Uber Eats, is Uber's food delivery platform which utilizes its Uber drivers to transport food from local restaurants to individuals in a very similar manner as the car service platform.

3.  To assist in carrying out its business, Uber Eats routinely contacts restaurant owners with automatic telephone dialing equipment to provide various advisements. However, due to its large scale of operations, Uber Eats regularly sends prerecorded messages to the cellular telephones of individuals who have no prior relationship with Uber Eats and never provided their cellular phone number to Uber Eats, in violation of the TCPA. In addition, these individuals who receive the phone calls are left with no means to opt of receiving the harassing robocalls.

4.  Uber Eats' violations caused Plaintiff and members of the Class to experience actual harm, included aggravation, nuisance, and invasion of privacy that

necessarily accompanies the receipt of unsolicited and harassing robocalls, as well as the violation of their statutory rights.

5. Plaintiff and members of the Class suffered a concrete injury in fact, whether tangible or intangible, that is directly traceable to Defendant's conduct, and is likely to be redressed by a favorable decision in this action.

6. Moreover, the transmission of an unsolicited robocalls to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power which shortens the battery life; and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message.

7. Plaintiff seeks an injunction stopping Uber Eats from making unsolicited robocalls, as well as an award of statutory damages under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, a federal statute. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 751-53 (2012). Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks up to $1,500 in damages for each phone call in violation of the TCPA, which, when aggregated among a proposed class number in the tens of thousands, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of the Defendant, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A). Therefore, both elements of diversity

jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

9.   The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant transacts significant amounts of business within this District and Defendant resides in this District.

## PARTIES

10.   Plaintiff Victoria Caffey is, and at all times mentioned was, a resident of the State of Illinois. She is, and at all times mentioned herein, was a "person" as defined by 47 U.S.C. § 153 (39).

11.   Defendant is a Delaware corporation with its principal place of business located at 1455 Market Street, 4th Floor, San Francisco, CA 94103. Defendant is a "person" as defined by 47 U.S.C. § 153 (39).

## THE TELEPHONE CONSUMERS PROTECTION ACT OF 1991 ("TCPA") 47 U.S.C. §§ 227 et seq.

12.   In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.   The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

14.   According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. §§ 201 et seq.

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

1  implementing the TCPA, such calls are prohibited because, as Congress found,
2  automated or prerecorded telephone calls are a greater nuisance and invasion of
3  privacy than live solicitation calls, and such calls can be costly and inconvenient.
4  The FCC also recognized that wireless customers are charged for incoming calls
5  whether they pay in advance or after the minutes are used.[3]

6  15. The TCPA makes it "unlawful for any person within the United States
7  ... (A) to make any call (other than a call made for emergency purposes or made with
8  the prior express consent of the called party) using any automatic telephone dialing
9  system or an artificial or prerecorded voice ... (iii) to any telephone number assigned
10 to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11 16. "A person or entity" can bring a claim to recover the greater of actual
12 damages or $500 for a violation of § 227(b)(1)(A)(iii). *Id.* § 227(b)(3). A court may
13 award treble damages for a willful or knowing violation. *Id.*

14 17. The TCPA defines "automatic telephone dialing systems" (ATDS) as
15 follows: (1) The term 'automatic telephone dialing system' means equipment which
16 has the capacity—(A) to store or produce telephone numbers to be called, using a
17 random or sequential number generator; and (B) to dial such numbers. *See* Pub. L.
18 No. 102-243, § 227, 105 Stat. 2394, 2395.

19 18. "[T]he statutory definition of ATDS is not limited to devices with the
20 capacity to call numbers produced by a "random or sequential number generator,"
21 but also includes devices with the capacity to dial stored numbers automatically."
22 *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

23 19. Prior express consent is an affirmative defense on which Defendant
24 bear the burden of proof. The type of consent required depends on the content of
25 the message. If the message contains advertising or is telemarketing, the sender must

---

[3] *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014 (2003) ("2003 TCPA Order").

have secured, prior to sending the message, the signature of the recipient in a written agreement that includes several specified disclosures. *See* 47 C.F.R. § 64.1200(f)(8).

20. As of October 16, 2013, express **written** consent is required to make any such telemarketing calls.4 The express written consent must be signed and be sufficient to show the consumer received clear and conspicuous disclosure of the significance of providing consent and must further unambiguously agree to receive future phone calls.5

## FACTUAL ALLEGATIONS

21. The TCPA was intended to give individuals control over how and where they receive phone calls to their cellular devises.  When Defendant blasts individuals with robocalls without their consent, they fail to address or respect the limitations imposed by the TCPA.  In doing so, it takes control away from the consumers and violates both the spirit and the letter of the TCPA.

22. On or around February 2020, Plaintiff began receiving unsolicited robocalls from Defendant from various phone numbers to her wireless phone ending in the number 4014, for which Plaintiff provided no consent to call.

23. The constant and continuing, unsolicited robocalls pertain to an Uber Eats account which does not belong to Plaintiff.

24. In fact, Plaintiff has never used an Uber vehicle or the Uber Eats service.  Plaintiff is also not a restaurant owner and does not have an Uber Eats account.

25. Plaintiff has attempted with no success to stop receiving the harassing robocalls, however is unable as the prerecorded messages requires a pin number to continue to call.  Additionally, Plaintiff has attempted to go on the Uber Eats website

---

4 *In Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1837 ¶ 18, 1839 ¶ 20, 1858 ¶ 71 (2012) ("2012 FCC Order").

5 2012 FCC Order at 1844 ¶ 13.

to stop the calls, however again, a specific pin is required, making it impossible for Plaintiff to stop the calls.

26. Plaintiff has contacted her phone carrier to assist in stopping the harassing phone calls as she is a senior and must have her phone on her in case of an emergency. However, Plaintiff's phone carrier has advised that her only option is to change her number.

27. Plaintiff has received numerous robocalls from Defendant over the past few months, at times, two calls a day.

28. For example, on March 6, 2020, March 10, 2020, March 15, 2020, March 19, 2020, March 22, 2020 and March 24. 2020, Plaintiff received the following unsolicited prerecorded robocall message from Uber Eats:

> "Hi, this is Elise calling from Uber Eats. we wanted to let you know that your restaurant is currently unavailable to our customers. Please make sure that your iPad is turned on and you are logged into the Uber Eats app. If you are having issues, please contact our support team. Thanks."

29. Plaintiff also received similar prerecorded robocalls from Uber Eats on March 19, 2020, March 21, 2020, March 22, 2020, March 26, 2020 with the following message:

> "Hi there, you have a new Uber Eats order waiting for you. Please accept the order on your Uber Eats tablet. If you are unable to accept the order please contact Uber Eats support. You can also call support to opt out of receiving these calls. Thank you."

30. Again, Plaintiff has been unable to opt out of receiving these calls as the support number requires a pin which Plaintiff does not have. Thus, the opt out method provided is useless for individuals, like Plaintiff, who are receiving these calls and who are not account holders.

31. Plaintiff has never provided Defendant with her phone number or consented to phone calls from Defendant on her mobile telephone.

32. Defendant places these unsolicited robocalls using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, without any need for human intervention.

33. These unsolicited robocalls placed to Plaintiff's mobile telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227 (a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to place telephone calls to Plaintiff's cellular telephone by dialing such numbers.

34. The existence of an ATDS is further evidenced by the fact that the robocalls received by Plaintiff are generic as to the intended recipient, i.e., the messages do not address Plaintiff individually or in any fashion. Such generic and impersonal messages indicate that these messages were sent to numerous cellular telephones in a bulk, automated fashion.

35. The unsolicited and robocall messages placed to Plaintiff's mobile telephone also featured a prerecorded voice.

36. The telephone number that Defendant, or its agents, called was assigned to a cellular telephone service for which Plaintiff incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

37. These robocalls constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

38. Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited phone calls pursuant to 47 U.S.C. § 227 (b)(1)(A).

39. These phone calls by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and on behalf of and all others similarly situated ("the Class").

Plaintiff represents, and is a member of the Class, consisting of all persons within the United States who received any unsolicited phone calls from Defendant or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3) or featuring prerecorded voice messages, which phone calls by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of final approval.

41. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes members number in the hundreds of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

42. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and members of the Class via their cellular telephones by using unsolicited robocalls, thereby causing Plaintiff and members of the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and members of the Class previously paid, and invading the privacy of said Plaintiff and the members of the Class. Plaintiff and the members of the Class were damaged thereby.

43. This suit seeks only statutory damages and injunctive relief for on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the

Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

44. The joinder of the members of the Class are impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendant's records or Defendant's agents' records.

45. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual members of the Class, including the following:

  a. Whether, within the four years prior to the filing of this Complaint through the date of final approval, Defendant or its agents made phone calls without the recipients' prior express consent (other than a phone call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system, to any telephone number assigned to a cellular telephone service;
  b. Whether the robocalls featured a prerecorded voice;
  c. Whether the equipment Defendant, or its agents, used to make the robocalls was an automatic telephone dialing system as contemplated by the TCPA;
  d. Whether Defendant, or its agents, systematically made phone calls to persons who did not previously provide Defendant with their prior express consent to receive such text messages;
  e. Whether Plaintiff and the Class were damaged thereby, and the extent of damages for such violation; and
  f. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

46. As a person that received at least one unsolicited phone call to her cellular telephone without prior express contest, Plaintiff is asserting claims that are typical of the Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to any member of the Class.

47. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, members of the Class could afford to individually seek legal redress for the wrongs complained of herein.

48. A class action is a superior method for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

49. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1

### NEGLIGENT VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

50. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51. Defendant made unauthorized phone calls using an automatic telephone dialing system and/or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

52. These phone calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to make these robocalls simultaneously to thousands of consumers' cellphones without human intervention.

53. The foregoing acts and omissions of Defendant and its agents constitute multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

54. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55. Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT 2

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. §§ 227 *ET SEQ.*

56. Plaintiff incorporates by reference paragraphs 1-55 of this Complaint as though fully stated herein.

57. Defendant made unauthorized robocalls using an automatic telephone dialing system and/or prerecorded voice to the cellular telephone number of Plaintiff and the other members of the Class without their prior express written consent.

58. These unsolicited calls were made *en masse* using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. By using such equipment, Defendant was able to make thousands of calls simultaneously to thousands of consumers' cellphones without human intervention.

59. The foregoing acts and omissions of Defendant and their agents constitute multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. §§ 227 *et seq*.

60. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and the Class are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

61. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiff respectfully requests the Court to grant Plaintiff and the Classes the following relief against Defendant:

### **FIRST COUNT FOR NEGLIGENT VIOLATION OF THE TCPA**
### **47 U.S.C. §§ 227 *ET SEQ.***

62. As a result of Defendant's, and Defendant's agents', negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class

member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### SECOND COUNT FOR KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA 47 U.S.C. §§ 227 *ET SEQ.*

64. As a result of Defendant's, and Defendant's agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

65. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

* * *

66. Any other relief the Court may deem reasonable, just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

### DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendant take affirmative steps to preserve all phone calls, recordings, data, emails, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the sending of phone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff or the account in question, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials, and notify the undersigned of the circumstances

immediately so that counsel may take appropriate action. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Dated: April 10, 2020

*s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
ALEXIS M. WOOD
KAS L. GALLUCCI
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*